UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
KEITH FOLK,

                Petitioner,              **MEMORANDUM & ORDER**
                                                                      05-CV-557 (NGG)

   - against -

WILLIAM PHILIPS, Superintendent
of Green Haven Correctional Facility,

                Respondent.
-----------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

Petitioner Keith Folk ("Folk" or "Petitioner") brings this habeas corpus petition pursuant to 28 U.S.C. § 2254, alleging that he is being held in state custody in violation of his federal constitutional rights and seeking to overturn his April 2, 1995 conviction for Robbery in the First Degree and Grand Larceny in the Fourth Degree. For the reasons set forth below, the petition is denied.

**I.    BACKGROUND**

    **A.    Factual Background**

On December 6, 1993, at approximately 11:30 a.m., Jason Judd ("Judd") was robbed at gunpoint outside the Williamsburgh Bank on Broadway in Brooklyn. (Affidavit in Opposition to Petition for a Writ of Habeas Corpus ("Opp. Br.") at 3.) Judd handled the banking for Arnold Meats, a family-owned business in the Williamsburg section of Brooklyn and, that day, had driven to the bank to deposit about $65,000 in checks and $7,000 in cash. (Id. at 3-4.) Judd was about to deposit the money when Petitioner approached him, displayed a gun, and threatened him, saying, "I've got a gun. Give me the bag. I'm going to that car." (Id. at 4.) Judd looked around and saw a dark blue

four-door car parallel to his own black station wagon. (Id.) Judd reached into his vest and threw a paper bag containing the money and checks in the direction of the dark blue car and then started walking away from Petitioner. (Id.) Petitioner then drove off in his car. (Id. at 5.) Judd entered the bank to report the crime. (Id.) The police then responded to the bank and drove Judd around the neighborhood but could not find Petitioner. (Id.)

On June 16, 1994, Judd viewed a lineup in the 90th Precinct, consisting of Petitioner and five other males. (Id.) Petitioner was accompanied by his attorney, Christopher Boyle ("Boyle"), who objected to the haircut of the fillers. (Id.) In response to those objections, Mahatcek provided painter's caps to all the participants of the lineup. (Id. at 5-6.) Judd viewed the lineup and asked Mahatcek if it was possible for the individuals to stand up. When the individuals stood, Judd then quickly identified Petitioner as the man who had robbed him at gunpoint. (Id. at 6.)

For this crime, Petitioner was charged with Robbery in the First Degree (N.Y. Penal Law § 160.15[4]) and Grand Larceny in the Fourth Degree (N.Y. Penal Law § 155.30[5]). Judd identified Petitioner in court at the trial as his assailant. In March 1995, following a jury trial, Petitioner was convicted of both crimes. On April 12, 1995, the court sentenced Petitioner to concurrent terms of 25 years to life imprisonment on the robbery count and two to four years on the grand larceny count.

Petitioner, through counsel, appealed his conviction to the New York Supreme Court, Appellate Division, Second Department. On appeal, Petitioner raised four claims: (1) The trial court improperly allowed the People to call two rebuttal witnesses; (2) The lineup procedure was unduly suggestive; (3) The evidence was legally insufficient to establish defendant's guilt and the jury's verdict was against the weight of the evidence; and (4) Petitioner's sentence was harsh and excessive.

On November 18, 1996, the Appellate Division affirmed Petitioner's judgment of conviction. People v. Folk, 233 A.D.2d 462, 650 N.Y.S.2d 272 (2d Dept. 1996). On November 24, 1996, Petitioner sought leave to appeal to the New York Court of Appeals. By certificate dated January 27, 1997, the Court of Appeals denied the application. People v. Folk, 89 N.Y.2d 942 (1997) (Kaye, Ch. J.).

On December 30, 1997, Petitioner filed a *pro se* motion to vacate his judgment of conviction pursuant to New York Criminal Procedure Law ("N.Y.C.P.L.") § 440.10 ("Article 440 motion"). Petitioner claimed that his conviction should be vacated because he received ineffective assistance of trial counsel, noting that counsel failed to introduce into evidence the minutes of a church meeting, failed to raise a particular argument when challenging the admissibility of the People's rebuttal evidence, and failed to request a missing witness charge. On December 23, 2003, the New York Supreme Court, Kings County, denied Petitioner's Article 440 motion. On February 3, 2004, Petitioner applied for permission to appeal to the Appellate Division from the order denying his motion to vacate his judgment of conviction. By order dated March 31, 2004, Justice Miller of the Appellate Division denied Petitioner's motion for permission to appeal.

On June 9, 2004, Petitioner filed a petition for a writ of error *coram nobis* in the Appellate Division. He argued that he had been denied effective assistance of appellate counsel because counsel failed to raise a claim of ineffective assistance of trial counsel, making essentially the same arguments that he did in the motion to vacate dated December 30, 1997. On October 18, 2004, the Appellate Division denied the petition. People v. Folk, 11 A.D.3d 637, 782 N.Y.S.2d 681 (2d Dept. 2004). Petitioner then sought leave to appeal this decision to the New York Court of Appeals on November 9, 2004. By certificate dated December 21, 2004, the court denied leave to appeal.

People v. Folk, 4 N.Y.3d 743, 790 N.Y.S.2d 656 (2004) (G.B. Smith, J.).

Petitioner is currently incarcerated pursuant to his judgment of conviction. On January 18, 2005, he filed this petition for a writ of habeas corpus, raising all the claims advanced in his direct appeal, his motion to vacate his judgement of conviction, and his motion for a writ of error *coram nobis*.

## II. DISCUSSION

### A. Standard of Review

The standard of review for habeas corpus petitions filed by state prisoners is set forth in 28 U.S.C. § 2254(d), as amended by the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"). If Folk's claims have been fully adjudicated on the merits in state court, he must show that the state court proceedings–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d). A state court's decision is contrary to clearly established federal law as determined by the Supreme Court "if the state court applies a rule that contradicts the governing law set forth in [the Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 412 (2000). A state court's decision is an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407.

-4-

Accordingly, this court cannot grant the Petitioner's writ if it merely "concludes in its independent judgment that the relevant state court decision applied clearly established Federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. The Second Circuit has warned, however, that while "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (citations and quotation marks omitted).

  B.  Analysis

    1.  Prosecution's Improper Rebuttal Evidence

Petitioner first claims that his conviction should be reversed because the prosecutor introduced improper rebuttal evidence that denied him a fair trial.

During the trial, Petitioner called two alibi witnesses, Reverend Robert Butler ("Butler"), the leader of the Holy Assembly Church, and Lauren Rodriguez ("Rodriguez"). Butler had known Petitioner for about twenty years, and Rodriguez was a friend of Petitioner's sister, Marlene Folk. (Opp. Br. at 21.) Both testified that Petitioner was, at the time of the robbery, present at a church meeting organized by Butler in his apartment for a "prison prevention outreach" program. (Id.) Butler asserted that he had been a member of Pastor Don Bethany's ("Bethany") church, the New Testament Church of God, for a few years, had an office in that church and used space there for his own congregation. (Tr. 283, 293, 303.) Rodriguez testified that, on December 6, 1993, she took minutes of the meeting in longhand, gave them to Butler and never saw them again. (Id.) Butler testified that the minutes were typed and filed at Bethany's New Testament Church of God. (Id. at 287-88.)

After the defense rested, the People then called two alibi rebuttal witnesses. The first rebuttal witness called by the prosecution was Bethany. Before Bethany testified, the court directed the prosecution to give an offer of proof to ensure that his testimony would be relevant. (Trial Transcript ("Tr.") at 416.) The prosecutor said that Bethany would testify that Butler was a member of Bethany's church for the last two or three months, that he did not have any office there or any access to secretarial services, and that no minutes recorded by Butler were kept at the church. (Tr. at 418-20.) The court authorized Bethany's testimony but instructed the prosecutor that he could elicit only whether Butler used Bethany's church facilities and whether he stored Butler's minutes in his church, though he could not inquire as to the actual taking of the minutes. (Tr. at 422.) When he testified, Butler had stated that he had been involved with Bethany's church for three to four years (Tr. at 295-296), that he had an office there (Tr. at 293), and filed the minutes of his meetings in this church, including the minutes of December 6, 1993 meeting (Tr. at 287-88). Bethany then did testify that Butler had been a member of his church for only two or three months before trial, that he had never had access to any office, clerical services, or computer in that church, and that he had never kept any records in it. (Tr. at 427-29) In summation, the People argued that Butler could not have used the church's facilities to write the minutes of the meeting held at the time of the robbery, nor could he have stored the minutes in this church, as he had testified.

Petitioner now claims that Bethany's testimony infused the trial with unfairness that deprived him of his constitutional right to a fair trial. This court disagrees. Bethany's testimony directly bore on the authenticity of the minutes referred to by Butler and Rodriguez, and in turn, the occurrence of the meeting Petitioner claims to have attended at the time of the robbery. Accordingly, the rebuttal case was clearly relevant to a material issue in the case, *i.e.* the validity of Petitioner's alibi

defense. See, e.g., Velasquez v. Leonardo, 898 F.2d 7, 9-10 (2d. Cir. 1990) (People properly introduced evidence in rebuttal where evidence was relevant to the credibility of defendant's alibi witness); Estelle v. McGuire, 502 U.S. 62, 68-70 (1991) (holding that introduction of evidence did not constitute a due process violation where that evidence was relevant to an issue in the case).

Barbara Bell ("Bell"), Petitioner's ex-girlfriend, was the second rebuttal witness called by the prosecution. The prosecution intended to elicit that Petitioner initially asked her to say they were together at the time of the robbery. However, she asserted her Fifth Amendment privilege and thus did not provide any substantive evidence against Petitioner. (Tr. at 444-55.) Moreover, following defense counsel's request, the court instructed the jury that Bell had a right to claim a privilege under the Fifth Amendment and that no inference should be drawn that would be unfavorable to one of the parties. (Tr. at 455-56) Since "the law recognizes a strong presumption that juries follow limiting instructions," United States v. Snype, 441 F.3d 119, 129 (2d. Cir. 2006), the court must assume that the jury did not give any weight to Bell's testimony. Thus, Petitioner's claim that her testimony resulted in unfairness must fail.

Because the Appellate Division correctly and reasonably concluded that the State's rebuttal case did not deny Petitioner his constitutional right to due process of law, Petitioner's improper-rebuttal claim is denied.

### 2. Unnecessary Suggestiveness of Lineup

Petitioner claims that his in-court identification denied him a fair trial because the lineup viewed by Judd, more than six months after the crime, was unnecessarily suggestive.

The Supreme Court has held that a defendant has a due process right under the Fourteenth Amendment to be free from pretrial identification procedures that are "so impermissibly suggestive

as to give rise to a very substantial likelihood of irreparable misidentification." Simmons v. United States, 390 U.S. 377, 384 (1968). Even if a pretrial identification procedure was so suggestive as to be inadmissible, an in-court identification by a witness – as opposed to in-court testimony about his out-of-court identification – may nevertheless be admitted if it is independently reliable. United States v. Thai, 29 F.3d 785, 808 (2d Cir. 1994); United States v. Butler, 970 F.2d 1017, 1021 (2d Cir. 1992). In determining whether the in-court identification is independently reliable, a court must consider "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." Neil v. Biggers, 409 U.S. at 199-200 (1972). "A good or poor rating with respect to any one of these factors will generally not be dispositive, and in each case, the question of independent reliability must be assessed in light of the totality of the circumstances[.]" Raheem, 257 F.3d at 135 (citations omitted).

In this case, Boyle objected to the haircuts of the fillers, to the height and weight of the fillers, and to the skin tone of the fillers at the time the lineup was conducted. (Pre-trial hearing Transcript ("Hrg. Tr.") at 15-16.) On the basis of those observations, Mahatcek, who conducted the lineup, supplied the fillers with painter's caps to wear before Judd viewed the lineup and placed a phone book under one of the fillers so that he would appear to be taller. (Id. at 16.) Nevertheless, he did not act on Boyle's objections to the weight and skin tone of the fillers.

Petitioner claims that the lineup was suggestive with respect to the weight and the skin tone of the fillers. The Second Circuit has held that: "A lineup is unduly suggestive as to a given defendant if he meets the description of the perpetrator previously given by the witness and the other

lineup participants obviously do not." Raheem, 257 F.3d at 134 ; see also United States v. Wong, 40 F.3d 1347, 1359-60 (2d Cir. 1994) ("[T]he principal question in determining suggestiveness is whether the appearance of the accused, matching descriptions given by the witness," stood out from the other participants so as to suggest that the suspect was the culprit) (citation and quotation marks omitted).

After the crime, Judd described the individual who robbed him as a black male, who was in his forties, approximately 5'10" tall, weighing approximately 180 pounds, with a beard, mustache, and short brown hair, and wearing a light brown jacket with an orange liner and dark colored pants. (Hrg. Tr. at 7.) He did not describe the robber as a light-skinned African-American male. Since Judd did not provide police officers with a description of the robber's skin tone, the lineup was not suggestive with respect to that physical characteristic. A difference in skin tone does not render a lineup impermissibly suggestive if skin tone was not part of the description of the perpetrator previously given by the witness. See Roldan, 78 F. Supp. 2d at 273-74. The facts of this case are thus distinguishable from those in United States v. Fernandez, 456 F.2d 638 (2d Cir. 1972), where the Second Circuit held that a photographic array was impermissibly suggestive because witnesses described the suspect as a light-skinned African-American male and, of the six individuals presented in a photo array, only the defendant was a light-skinned African-American male.

As to Petitioner's weight, Boyle testified that the five other fillers weighed 220 pounds, 235 pounds, 175 pounds, 200 pounds and 180 pounds, whereas Petitioner weighed 260 pounds at the time of the lineup. (Pre-Tr. Tr. at 45-46.) Even if Petitioner weighed more than the other fillers, this circumstance alone does not render the lineup unduly suggestive. "There is no requirement that a suspect in a lineup be surrounded by people identical in appearance." Roldan, 78 F. Supp. 2d at 271;

see also United States v. Porter, 430 F. Supp. 208, 211-12 (W.D.N.Y. 1977) (where a lineup was held not to be invalid although defendant weighed 150 pounds and all of the fillers weighed more 190 pounds).

Therefore, based on the facts of this case, I find that the Appellate Division reasonably and correctly concluded that the lineup was not unduly suggestive. As a result, the court need not consider whether the identifications made at the lineup were independently reliable.

### 3. Verdict against the weight of the evidence and legal sufficiency

Petitioner claims that the People did not prove his guilt beyond a reasonable doubt and that the verdict of guilt was against the weight of the evidence.

To prevail on the legal sufficiency claim, Petitioner must show that the evidence introduced at trial was not legally sufficient to establish his guilt beyond a reasonable doubt. Petitioner bears a heavy burden, since a reviewing court views the evidence "in the light most favorable to the government, crediting every inference that the jury might have drawn in favor of the government." United States v. Walker, 191 F.3d 326, 333 (2d Cir.1999). As a result, a reviewing court will not disturb a conviction if "any rational of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).

Pursuant to N.Y. Penal Law § 160.15(4), a defendant is guilty of Robbery in the First Degree if he forcibly steals property and, in the course of the commission of the crime or of the immediate flight therefrom, the defendant displays what appears to be a firearm. Pursuant to N.Y. Penal Law § 155.30(5), a defendant is guilty of Grand Larceny in the Fourth Degree if the defendant steals property from the person of another.

During trial, Judd testified that the person who robbed him held a gun inside his jacket

pointed at him, saying, "I've got a gun. Give me the bag. I'm going to that car." (Tr. at 176.) Judd then threw the money which was in a bag in the direction of the robber's car. (Id. at 177.) The crime occurred on a "clear, sunny day," Judd's view was not obstructed in any way, and he was able to identify Petitioner as the individual who robbed him. (Id. at 171, 178-79.) Indeed, during the lineup arranged by Mahatcek on June 16, 1994, once all the individuals were standing, it only took five to ten seconds for Judd to identify Petitioner as the man who had robbed him at gunpoint. (Hrg. Tr. at 22.) Judd also identified Petitioner as being the individual who robbed him when he testified in court. (Tr. at 180-81.)

Therefore, the People established every element of the crimes with which Petitioner was convicted, and the evidence is legally sufficient to prove Petitioner's guilt beyond a reasonable doubt. Indeed, "the testimony of a single, uncorroborated eyewitness is generally sufficient to support a conviction." United States v. Danzey, 594 F.2d 905, 916-917 (2d Cir. 1979). As to Judd's credibility, "we may not substitute our own determinations of credibility or relative weight of the evidence for that of the jury." United States v. Autuori, 212 F.3d 105,114 (2d Cir. 2000). The court "must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt." United States v. Mariani, 725 F.2d 862, 865 (2d Cir. 1984) (quoting United States v. Taylor, 464 F.2d 240, 243 (2d Cir. 1972). The jury credited Judd's identification testimony, and the evidence introduced at trial was legally sufficient.

Petitioner also argues that his conviction was against the weight of the evidence. As the People note, however, this claim is not properly raised in a petition for habeas corpus, since it is a state law claim. See, e.g., Correa v. Duncan, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001) (holding

that a weight of the evidence claim is a "pure state law claim" and that the court was precluded from considering it on a petition for habeas corpus). As the Supreme Court has held: "It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review , a federal court is limited to deciding whether a conviction violated the Constitution, laws, or the treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). As a result, both the evidence sufficiency and weight of the evidence claims are denied.

### 4. Excessive Sentence

Petitioner's claim that his sentence was excessive is also denied. According to the Second Circuit, "[i]t is well settled that a sentence imposed within the limits of a statute cannot amount to cruel and unusual punishment." United States v. Dawson, 400 F.2d 194 (2d Cir. 1968). Therefore, "no constitutional issue is presented for habeas corpus relief where a sentence imposed falls within the range prescribed by statutory law." Alvarez v. Scully, 833 F. Supp. 1000, 1009 (S.D.N.Y. 1993); see also White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992).

Petitioner's concurrent prison sentences of twenty-five years to life imprisonment on the robbery count and two to four years on the grand larceny count fall within the range prescribed by statutory law. Under the New York Penal Law, Robbery in the First Degree is a class B felony (N.Y. Penal Law § 160.15 [4]), and Grand Larceny in the Fourth Degree is a class E felony (N.Y. Penal Law § 155.30 [5]). As far as the robbery count is concerned, Petitioner is a persistent violent felony offender due to his prior criminal record.[1] (N.Y. Penal Law § 70.08.) As to the grand larceny count,

---

[1] In 1980, Petitioner was convicted of Robbery in the first degree and Robbery in the second degree. In 1985, he was again convicted of Robbery in the second degree.

Petitioner is a second felony offender.[2] (N.Y. Penal Law §§ 70.06, 70.08) Under the New York Penal Law as it existed on the date of the crime, December 6, 1993, the minimum possible sentence for a persistent violent felon convicted of a class B violent felony offense was ten years to life, and the maximum possible sentence was 25 years to life. (1993-1994 Gilbert Criminal Law and Procedure, Penal Law §§ 70.08 (2), (3)(a).) The minimum possible sentence for a second felony offender convicted for a class E felony offense was one and a half to three years and the possible maximum sentence was two to four years. (1996 Gilbert Criminal Law and Procedure, Penal Law §§ 70.06 (3)(e), (4)(b)) Because Petitioner's sentences do not exceed the statutory limitations, they do not qualify as unconstitutionally harsh and excessive.

### 5. Ineffective assistance of trial and appellate counsel

#### I. Ineffective assistance of trial counsel

Petitioner asserts that his trial counsel's failure to introduce the minutes of a church meeting, to raise a particular argument when challenging the admissibility of the People's rebuttal evidence, and to request a missing witness charge constituted ineffective assistance of counsel.

This claim has been procedurally exhausted in state court through Petitioner's *pro se* Article 440 motion to vacate the judgment of his conviction. The state court denied his Article 440 motion on the grounds that Petitioner's claim was procedurally barred because the claim could have been raised on direct appeal and, in the alternative, that his claim was meritless. (Opp. Br. at 4.) The Supreme Court has held that a federal court need not review questions of federal law decided by a state court if the decision of that state court rests on state law grounds that are independent of any

---

[2] In 1991, Petitioner was convicted of Grand Larceny in the Fourth Degree.

federal question and are adequate to support a judgment. Coleman v. Thompson, 501 U.S. 722, 729-30 (1991) N.Y.C.P.L. § 440.10(2)(c) provides that a trial must deny a motion to vacate a judgment when:

> [a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him.

Since this statute is an adequate and independent state ground for decision, Levine v. Comm'r of Correctional Services, 44 F.3d 121, 126 (2d Cir. 1995), this claim is procedurally barred.

However, the court also denies Petitioner's claim on the merits. The Sixth Amendment provides that a criminal defendant "shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. Amend. VI. In order to prevail on a Sixth Amendment claim, a petitioner must prove that counsel's representation "fell below an objective standard of reasonableness" measured under "prevailing professional norms" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 688, 694 (1984). A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." Id. at 694. Furthermore, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. Strategic choices made by counsel after a thorough investigation of the facts and law are "virtually unchallengeable." Id. at 690. Therefore, "a habeas petitioner will be able to demonstrate that trial counsel's decisions were objectively unreasonable only if 'there [was] no . . . tactical justification for the course taken.'" Lynn v. Bliden, 443 F.3d 238, 247 (2d Cir. 2006).

Petitioner claims that counsel was ineffective on the basis of three specific decisions that trial counsel made. First, Petitioner argues that trial counsel did not introduce the minutes from the church meeting, which, he asserts, would have proven that he was present at that church meeting at the time of the robbery. Following Petitioner's letter dated May 18, 2007, those minutes were recently found by the prosecution (Respondent's Exhibit K) and, Petitioner argues, indicate that he was present at the meeting on December 6, 1993. As a result, Petitioner claims that he has been deprived of due process. This court disagrees. Petitioner did not receive ineffective assistance of trial counsel due to counsel's failure to introduce the minutes into evidence at trial. By finding Petitioner guilty, the jury clearly determined that Petitioner's alibi and Butler's testimony was fabricated. There is nothing to suggest that a typewritten paper – one containing no indicia of reliability or authenticity – would have altered that credibility determination.

There are, as the People argued, "reasons to doubt the authenticity of this [typewritten] document." (Supplemental Memorandum of Law at 2.) Other than Butler's own testimony, as even Butler conceded at trial, there is nothing to corroborate the minutes of that meeting. (Tr. at 351-352.) Moreover, Butler and Petitioner are the only people identified by name in the minutes, even though Petitioner's sister Marlene Folk, Lauren Rodriguez and her husband Tony were also supposedly present at this meeting. (Id. at 287.) This could suggest, as the People argue, that these minutes might have specifically been created to provide Petitioner with an alibi. Because of these authenticity issues, Petitioner's trial attorney very reasonably may have thought that introducing it into evidence at trial would not have served his client's interest. Therefore, the trial's attorney decision falls within the ambit of reasonable trial strategy. Lynn, 443 F.3d at 247.

Moreover, under the test laid out in Strickland v. Washington, 466 U.S. 668, 694 (1984),

Petitioner must not only show that counsel's performance was deficient but also that counsel's deficient performance prejudiced the defense, meaning that there must be a reasonable probability that, but for counsel's mistake, the outcome of the trial would have been different. Applying this standard to the case at bar, it must have been shown that had counsel introduced the minutes, the jury's verdict would have been different. Although Petitioner indicated in his pretrial alibi notice that he was at the home of Bell, his former girlfriend, with Bell and her cousin at the time of the robbery (Tr. at 424, 433-34, 436, 443), he raised another, different alibi during trial, *i.e.* the church meeting at Butler's home. Furthermore, during trial, Bethany's testimony undermined Butler's credibility, calling into question the very occurrence of the meeting. Indeed, contrary to Butler's testimony (Tr. at 299, 301-303), Bethany testified that Butler had no connection with Bethany's church in December 1993, that Butler did not have any congregants himself, any room or office at this church, any access to any clerical or secretarial services there, and that Butler never kept any records at the church. (Tr. at 427-29.) In addition, Butler's own testimony was not credible: Butler testified that he remembered the date of the church meeting because it was a short time after Petitioner's mother had a stroke and Petitioner was upset as a result. (Tr. at 343-347) However, the prosecution then elicited that her stroke was in 1990, not 1993. (Tr. at 349.) There is consequently no "reasonable possibility" that, but for this alleged error to introduce the minutes, the verdict of the jury would have been different. See Strickland, 466 U.S. at 694.

The second decision that trial counsel made that Petitioner takes objection to is his failure to object to the People's failure to serve timely notice of the identity of alibi rebuttal witnesses. This too was a reasonable decision by counsel. Pursuant to N.Y.C.P.L. § 250.20(2) –

> "[w]ithin a reasonable time after receipt of the defendant's witness list but not later than ten days before trial, the People must serve upon

> the defendant or his counsel, and file a copy thereof with the court, a list of the witnesses the people propose to offer in rebuttal to discredit the defendant's alibi at the trial. . . ."

The state trial court, however, has discretion under N.Y.C.P.L. §§ 250.20(3), (4), to receive the testimony of a rebuttal alibi witness although the prosecution failed to serve and file the list of rebuttal witnesses. The trial court here allowed the prosecution to introduce alibi rebuttal testimony, pursuant to its discretion, and there is nothing to suggest that this was an abuse of discretion. Indeed, Petitioner's trial counsel had failed to give the prosecution timely notice of the two alibi witnesses he wanted to call. (Tr. at 33-38). As the People correctly argue, "because trial counsel did not notify the People of his alibi witnesses until after jury selection commenced, it was not possible for the People to serve prior to trial a list of the witnesses that the People intended to call in order to discredit the alibi." (Opp. Br. at 37.) Therefore, there is no basis upon which this court may find that Petitioner has been denied effective assistance of counsel because of his trial's attorney failure to object to the admissibility of the People's rebuttal evidence.

The third and final basis upon which Petitioner argues he was denied effective assistance of his trial counsel was his trial counsel's failure to request a missing witness charge with respect to a police officer. Under New York law, a defendant must show that an absent witness had testimony to offer about a material issue in order to be entitled to a missing witness instruction. People v. Gonzalez, 68 N.Y.2d 424, 427, 509 N.Y.2d 796, 799 (1986). Petitioner argues that the police officer at issue would have testified that, on the day he was arrested, December 29, 1993, Petitioner told the police officer that he weighed 250 pounds. Indeed, this police officer is the one who logged Petitioner's weight at 250 pounds in his pedigree report and in the Police Department on-line booking sheet. (Tr. at 254.) According to Petitioner, this is a material issue since Judd testified that

the robbery had been committed by a 180-pound man. (Tr. at 180.) However, Petitioner's self-serving out-of-court statement about his weight is not admissible under New York law. "A party's self-serving statement is inadmissible at trial when offered in his or her favor, and it may not be introduced either through the testimony of the party or through the testimony of a third person." Oliphant, 201 A.D.2d at 590-91. The police officer had no admissible evidence to offer, and thus Petitioner was not legally entitled to a missing witness charge with respect to this officer. Accordingly, on this point as well, Petitioner has not been denied effective assistance of trial counsel. See United States v. Arena, 180 F.3d 380, 396 (2d Cir. 1999) ("Failure to make a meritless argument does not amount to ineffective assistance"), cert. denied, 531 U.S. 811 (2000).

### ii. Ineffective assistance of appellate counsel

Petitioner further claims that he has been denied effective assistance of appellate counsel because his appellate counsel failed to raise a claim of ineffective assistance of trial counsel. This claim has been procedurally exhausted in state court through a writ of error *coram nobis,* described *supra*.

The standard of reasonableness under Strickland for appellate counsel does not require that all possible claims be raised on appeal or even than non-frivolous claims be raised. "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." Jones v. Barnes, 463 U.S. 745, 751052 (1983). "A brief that raises every colorable issue runs the risk of burying good arguments . . . in a verbal mound made up of strong and weak contentions." Id. at 753. Furthermore, for the reasons set forth above, Petitioner's claim of ineffective assistance of trial counsel was meritless. Thus, because the claim was meritless, appellate counsel reasonably

chose not to raise this claim. United States v. Arena, 180 F.3d 380, 396 (2d Cir. 1999) ("Failure to make a meritless argument does not amount to ineffective assistance"), cert. denied, 531 U.S. 811 (2000). And since the claim was meritless, appellate counsel's failure to raise the issue had no effect on the outcome of Petitioner's appeal.

Accordingly, the Appellate Division reasonably rejected Petitioner's claim of ineffective assistance of appellate counsel, and this court rejects this claim as a basis for granting a writ of habeas corpus.

### III. CONCLUSION

For the reasons set forth above, Folk's petition is hereby denied. No certificate of appealability shall issue. The Clerk of the Court is directed to close the case.


SO ORDERED.

Dated: November 30, 2007                      /s Nicholas G. Garaufis
     Brooklyn, NY                          Nicholas G. Garaufis
                                                             United States District Judge